**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
_____

William and Sandra Metcalf,

        Plaintiffs,

v.                                             **Memorandum of Law and Order**
                                               Civil File No. 05-1035 (MJD/SRN)

E.I. du Pont de Nemours and
Company,

        Defendant.
_____

Douglas J. Frederick, Rider Bennett, LLP, Counsel for Plaintiff.

Robert R. Weinstine, Winthrop & Weinstine, P.A., Counsel for Defendant.
_____

## I.     INTRODUCTION

This case is before the Court on Plaintiffs' Motion for Default Judgment and Defendant's Motion to Set Aside Default and For Leave to Answer or Otherwise Move Against the Complaint. [Doc. Nos. 9, 18.] Plaintiff filed this action alleging misappropriation of trade secrets and breach of contract. Defendants did not initially answer, resulting in a clerk's entry of default. [Doc. No. 6.] The Court required Plaintiffs to serve additional notice of the hearing on the Motion for Default Judgment. Defendants then filed a Motion to Set Aside Default and for Leave to Answer or Otherwise Move Against the Complaint. [Doc. No. 18.]

1

## II.     FACTUAL BACKGROUND

### A.     The Parties

Plaintiffs William and Sandra Metcalf are individuals doing business as Ramco, with their principal office and place of business in Minnesota.  Defendant E.I. Du Pont de Nemours and Company ("DuPont") is a Delaware corporation, with its principal place of business in Delaware.

The Metcalfs owned and licensed a computer software system used to calculate the most efficient use of carpet rolls in carpet installations, known as the "Ramco Estimating System."  The Ramco Estimating System is licensed to individual customers.

### B.     The Parties' Contracts

The Metcalfs, DuPont's predecessors, and DuPont entered into a series of licensing agreements commencing in 1995 and ending in 2004.  (Compl. ¶ 9.) The Metcalfs first entered into a licensing relationship with MSA Industries.  In 1996 MSA merged with DuPont Flooring Systems, Inc., an affiliate of DuPont.  The license agreement was subsequently renewed multiple times between 1997 and 2003.

The final licensing agreement ("2003 Agreement") expired on April 29, 2004.  The next day, April 30, 2004, DuPont sold the division that used the Ramco Estimating System, INVISTA, to Koch Industries.

The Metcalfs employ computer security devices to restrict the access and use of the software; these security devices are known as security "keys."  (Compl. ¶ 8.)  As customers lease the programs, they are given security keys to access the Ramco Estimating System.  Over the course of time Ramco has changed the security keys.  Beginning with black keys, then changing to yellow keys and finally ending with grey keys.

Upon expiration of the final licensing agreement between DuPont and the Metcalfs, many of the security keys were allegedly not returned as required by the agreement.  The Metcalfs claim that DuPont is responsible for monthly lease amounts, late fees, lost key penalties, and damages for misappropriation of trade secrets as a result of DuPont's failure to return the software.   DuPont states that pursuant to the terms of the transaction, INVISTA retained the Ramco Estimating System and any related liabilities.  The parties disagree over which contracts govern the fines imposed for lost keys and who is liable for those fines.

### C. The Parties' Communications and Procedural History

DuPont began returning some of the software systems and security keys in March 2004, one month before the 2003 Agreement expired.  After the 2003 Agreement expired on April 30, 2004, the Metcalfs made several attempts to retrieve the remaining software systems and security keys.  The Metcalfs sent three letters to INVISTA during May of 2004 documenting which keys had been

returned.  On July 9, 2004, INVISTA sent a letter to the Metcalfs disputing which contract term governed the lost keys and acknowledging that pursuant to its interpretation INVISTA owed the Metcalfs money.  However, INVISTA believed the amount owed to be $500.00 per key rather than the $15,000 per key claimed by the Metcalfs.

On September 3, 2004 the Metcalfs' attorney sent a demand letter to DuPont.  INVISTA was copied on the letter.  Upon receipt of the letter, DuPont forwarded a copy to INVISTA and notified INVISTA that it was responsible to indemnify DuPont pursuant to the purchase agreement.  Addressing DuPont's allegations that it had no further obligations under the contracts because it sold INVISTA, the letter stated:

> [W]hile I understand that on or about May 1, 2004 DuPont sold its assets in the Invironmentalists [a subsidiary of INVISTA] to Koch Industries, we do not believe that Koch Industries has any role in this dispute because it did not take over the Invironmentalists' assets until after the completion of the contract between DuPont and Ramco.  In addition, paragraph 17 of the April 30 lease prevented DuPont from assigning its rights or duties under the agreement without prior written consent of Ramco, which consent was never given.

(Stevens Aff. Ex. F at 3.)

By May of 2005, the dispute had not been resolved and a number of software systems and security keys remained unreturned.  Thus, the Metcalfs took two actions: they reconfigured the software systems and security keys in an effort to mitigate any misappropriation of trade secrets, and they filed this lawsuit on

May 27, 2005.  DuPont was served with the Summons and Complaint on June 1, 2005.  Mr. David H. Burt, DuPont's corporate counsel acknowledges receiving the Complaint.  However, DuPont did not respond to the Complaint.  Instead, Burt states that he discussed the action with DuPont's chief counsel for mergers and acquisitions and derived the mistaken impression that INVISTA was aware of the action and was handling it.

On July 7, 2005 United States Magistrate Judge Jonathan Lebedoff ordered the Metcalfs to notify DuPont that it should immediately file a motion or submit a stipulation for an extension of time to answer.  The Metcalfs filed a request for entry of default on July 26, 2005.  On July 27, 2005 the Clerk of Court entered the default against DuPont.  (Doc. No. 6.)

The parties continued to exchange written communications regarding the dispute.  The Metcalfs sent additional invoices to both DuPont and the Invironmentalists.  Barney Kantar, an executive buyer for DuPont, responded by letter suggesting that the invoices should have been sent to INVISTA.  On September 20, 2005 Kantar had a telephone conference with Sandra Metcalf.  During that conversation, Kantar states that he informed Sandra Metcalf that INVISTA had assumed DuPont's obligations and agreed to deal with all of the invoices.  (Kantar Aff. ¶ 7.)

On January 11, 2006, the Metcalfs filed a motion for entry of default

judgment. The Metcalfs disclosed to the Court that they had not served notice of the hearing upon DuPont. On March 20, 2006 the Court ordered the Metcalfs to serve DuPont with notice of the Motion for Default Judgment and the Metcalfs did so on March 21, 2006.

On May 2, 2006 DuPont's counsel phoned the Metcalf's counsel to verify the hearing date. The following day DuPont's new counsel, Robert Weinstine, contacted Metcalf's counsel regarding this matter. On May 8, 2006 Weinstine sent a letter to the Court explaining that he had recently been hired by DuPont and was preparing to oppose the Motion for Default Judgment. DuPont filed its Motion to Set Aside Default on May 16, 2006, 56 days after being served with notice of the motion.

## III.   APPLICABLE LAW

Federal Rule of Civil Procedure 55(c) provides that the Court may set aside an entry of default "[f]or good cause shown." This is a less stringent standard than that required to set aside a judgment of default under Rule 60(b), though "the same factors are typically relevant in deciding whether to set aside entries of default and default judgments." Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 783 (8th Cir. 1998). It is particularly appropriate to apply a less stringent standard to cases where defendant has made an appearance before a default judgment since "it is likely that a party who promptly attacks an entry of default, rather than

waiting for a grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." Id. at 784.

In assessing whether there is good cause to set aside an entry of default, the Court looks at "(1) whether the conduct of the defaulting party was blameworthy or culpable, (2) whether the defaulting party has a meritorious defense, and (3) whether the other party would be prejudiced if the default were excused." Id. In doing so, the Court "should take account of all relevant circumstances surrounding the party's omission." Union Pac. R.R. Co. v. Progress Rail Servs., 256 F.3d 781, 782 (8th Cir. 2001) (quotation omitted). "The inquiry is essentially an equitable one, and the district court is required to engage in a careful balancing" of the above considerations. Id. The Court must also keep in mind that "[t]he entry of default judgment is not favored by the law and should be a rare judicial act." Jones Truck Lines, Inc. v. Fosters Truck & Equip. Sales, Inc., 63 F.3d 685, 688 (8th Cir. 1995) (quotation and citation omitted).

### A.     **Whether DuPont's Conduct Was Culpable**

A failure to respond to a summons and complaint is culpable or blameworthy when it is contumacious, involves intentional delay, or demonstrates a disregard for the Court's deadlines, rules and procedures. Johnson, 140 F.3d at 784. Thus, default judgment is not to be entered by a district court "for a marginal failure to comply with the time requirements." Jones Truck Lines, 63

F.3d at 688.

When faced with parties alleging miscommunication or a similar oversight as a reason for their delay, the Eighth Circuit has routinely held both in the Rule 55(c) and in the more stringent Rule 60(b) context, that a defendant should be allowed to defend the action on the merits.  See e.g. Union Pacific R.R. Co., 256 F.3d at 781 (reversing district court's denial of Rule 60(b) motion where the defendant responded to default judgment against it "less than 6 months" after the complaint had been filed and had not answered due to a "recording error by its legal department"); Johnson, 140 F.3d 781 (affirming district court's action of setting aside entry of default under Rule 55(c) where defendant responded to the suit 5 months after it was initiated because of "poor communication"); Hoover v. Valley West D M, 823 F.2d 227, 230 (8th Cir. 1987) (affirming district court's decision to set aside default judgment where defendant's attorney "did not learn of the litigation until default judgment had been entered" due to "a lack of communication").  However, in situations where the district court found the defendant's conduct dilatory, the Eighth Circuit has upheld default judgments. Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996) (refusing to set aside default when defendant had appeared and conducted discovery, and then suddenly stopped participating in litigation after firing its counsel).

The Court finds that this factor weighs in favor of granting DuPont's Motion to Set Aside Entry of Default.  DuPont failed to answer or appear in this action due to neglect and poor communication in its general counsel's office.  This was not a continuous error, but was based upon one miscommunication.  Upon learning of the Motion for Default Judgment, DuPont promptly began to investigate the proper response.  Notably, however, it did delay slightly before notifying the Court and opposing counsel that it planned to make an appearance in this matter.  Unlike the defendant in <u>Richardson v. Intown Suites Burnsville, L.P.</u>, No. 05-2308, 2006 WL 752940, at *2 (D. Minn. Mar. 22, 2006) (unpublished), who filed its motions within days of learning of the default, DuPont was served with notice of the default on March 21 but did not contact opposing counsel and the Court until May 2 and 8 respectively.

Even taking this delay into consideration, setting aside the default is proper under these circumstances.  DuPont's failure to answer was the result of a "single, simple error" much like the error in <u>Richardson</u>.  <u>Id.</u> at *3.  Furthermore, there is no evidence that DuPont intentionally disregarded this action or purposefully disobeyed the Court's rules as was apparent in <u>Ackra</u>.  86 F.3d at 857.  While DuPont's legal counsel should have followed up to ensure that an answer was filed, there is no evidence that this was more than an innocent oversight; it does not appear to be wilful ignorance or some sort of intentional delay tactic

employed by DuPont.  Although DuPont's actions in this case are not exemplary, they are not of the sort that warrants an entry of default judgment in spite of DuPont's willingness to defend the matter on its merits.

### B.        Whether DuPont Has a Meritorious Defense

The second factor to be weighed in determining whether to set aside a default is whether the defendant has a meritorious defense.  For the purposes of Rule 55(c), the defense need not be undisputed or insurmountable; it need only be one that would allow a finding for the defendant.  Johnson, 140 F.3d at 785; Richardson, 2006 WL 752940, at *3.

To comply with this factor DuPont notes seven potential meritorious defenses.  First, it argues that the Invironmentalists maintained its own corporate identity at all times and therefore DuPont in no way "transferred" trade secrets to Koch Industries.  Second, DuPont states that it expressly had the authority to transfer rights under the license to new entities and that the Metcalfs acquiesced to those transfers.  Third, DuPont argues that since the Metcalfs have no evidence that DuPont continued to use the Ramco Estimating System after expiration of the license, that the bulk of the alleged damages are untenable.  Fourth, DuPont avers that the 2003 Agreement superceded all previous agreements, yet the Metcalfs are attempting to recover late fees and lease payments under the allegedly superceded agreements.  Fifth, DuPont notes that pursuant to the 2003

Agreement, the liquidated damages amount for lost keys is $500, yet the Metcalfs allege $15,000 per key based on previous agreements.  Sixth, DuPont argues that the $15,000 liquidated damages would be unenforceable under Minnesota law as it is disproportionate to the actual damages resulting from the breach.  Finally, Dupont notes that INVISTA may be a necessary party to this litigation and DuPont should be allowed to implead INVISTA by third-party complaint.

The Metcalfs respond by attempting to refute each of DuPont's defenses.  However, as noted above, the Court is not required to determine the likelihood of success on the merits; it is only required to determine whether if true, Defendant's claim presents a meritorious defense.  DuPont's arguments, if true, would at a minimum support a substantial decrease in the amount of damages and could result in a complete finding for DuPont.  Accordingly, the existence of a meritorious defense weighs in favor of setting aside the entry of default.

### C. **Whether the Metcalfs Will Suffer Undue Prejudice**

The third factor to be weighed in determining whether to set aside a default is whether the plaintiff will suffer undue prejudice as a result of the defaulting party's failure to respond to the complaint in a timely manner.  Johnson, 140 F.3d at 784 (citation omitted).  "Prejudice may not be found from mere delay alone, or from the fact that the defaulting party will be permitted to defend on the merits."  Id. at 785.  Instead, "setting aside a default must prejudice

plaintiff in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" Id. at 784 (citing Berthelsen v. Kane, 907 F.2d 617, 621 (6th Cir.1990)).

Although it may be the case that discovery will be slightly more difficult because Koch Industries closed some offices after the filing of the Complaint, this is not a sufficient reason for the Court to enter default judgment against DuPont. First, many of the claims stated in the Complaint appear to be contractual and may require little, if any, witness testimony. Second, it is impossible to ascertain whether witnesses will in fact be more difficult to locate. Third, the potential damages in this case reach nearly $1 million. Equitably, a large amount of damages weighs in favor of hearing the case on the merits. Finally, the possibility that it will be more difficult to locate unreturned software systems won't significantly harm the Metcalfs as DuPont doesn't appear to be disputing that the software systems remain unreturned.

Having weighed all the factors set out by the Eighth Circuit as relevant to the "good cause" inquiry of Rule 55(c), the Court grants DuPont's Motion to Set Aside Default and For Leave to Answer and denies as moot the Metcalfs' Motion for Entry of Default Judgment.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant E.I. Du Pont de Nemours and Company's Motion to Set Aside Default and For Leave to Answer or Otherwise Move Against the Complaint [Doc. No. 18] is **GRANTED**.

2. Plaintiffs William and Sandra Metcalf's Motion for Default Judgment [Docket No. 9] is **DENIED AS MOOT**.

3. Defendants shall file their Answer within 30 days of this Order.

Dated: July 6, 2006               s / Michael J. Davis
                                  Judge Michael J. Davis
                                  United States District Court